CAMPBELL v. WATERMAN S. S. CORP.
Civ. A. No. 10107.

United States District Court
E. D. Pennsylvania.
Sept. 19, 1952.

Stark & Goldstein, Philadelphia, Pa., for plaintiff.

Rawle & Henderson, Philadelphia, Pa., for defendant.

FOLLMER, District Judge.

The plaintiff in this case who served as an ordinary seaman on defendant's Steamship Azalea City between April 3 and July 30, 1948, instituted a Jones Act, 46 U.S.C.A. § 688, suit seeking damages for injuries allegedly sustained while the vessel was in the port of Manila on May 29, 1948. The jury returned a verdict in favor of the defendant, and plaintiff has moved for a new trial.

The testimony was not transcribed, but from my recollection, aided by my own notes taken during the trial, the following represents the contentions of the parties:

Plaintiff, who had no other fact witnesses, testified that while walking across the open pier toward the vessel about 2:30 o'clock A.M., in the company of three other crew members, they were attacked by Chief Officer Higginbotham with a stick, knocking one of them down; that plaintiff ran to the ship for help and was met at the top of the gangway ladder by Higginbotham who was waving a fire axe, making threatening gestures and ordering them off the ship; that plaintiff stepped backward, missed his footing and his legs fell through the steps of the ladder causing the injuries which form the basis of the action.

Defendant's testimony was given by depositions and answers to interrogatories submitted to certain witnesses residing in Manila. Depositions were given by Higginbotham and by the Watch Officer, Second Officer Curtis. Interrogatories were answered in Manila by Marie Coria, Candido Hippolito, and Emilio Garcia. According to their testimony, Higginbotham went ashore in the evening of May 28, to keep an engagement with Miss Coria and Miss Borja. After spending some time at a night club, Higginbotham hailed a taxicab, driven by Garcia, to take the women to the home of Miss Coria. At that time he noticed nearby the plaintiff, Johns and Houghton, all crew members, who took another taxicab driven by Hippolito and followed Higginbotham. The women were discharged from the Garcia cab and went to Coria's door a few yards away. At this time the three crew members alighted from the Hippolito cab, jumped on Higginbotham, knocked him down and beat him, then ran back to their cab and departed.

The three Manila witnesses, Coria, Hippolito and Garcia, remembered the incident clearly, testifying to the same at a subsequent police station investigation, and also gave statements to the investigator for the defendant.

Higginbotham returned to the ship and as he was crossing the well lighted open pier space he saw Campbell, Johns, Houghton, and Slay, an oiler, coming rapidly toward him. On nearing him they raised their hands as though they were about to attack him, so he grabbed a stick and hit Johns and Houghton on the head in self-defense. Campbell ran away and fell hard on his knees. Higginbotham dropped the stick and went aboard the vessel. Campbell seized a stanchion alongside the gangway by cutting the rope with his knife, Slay grabbed a fire axe, and the other men got hold of beam bars. Higginbotham claimed that he took a fire axe to protect himself and backed up against the bulkhead on deck and that one of the men threw a beam bar at him from a distance of twenty feet, narrowly missing his foot. All five men were taken in custody by local shore police and held in jail until the Master of the ship arranged for their release the next morning.

There was no testimony to indicate that Higginbotham was a person of vicious or violent disposition or that he was likely to do personal harm to any of the crew, either on ship or on the shore, nor that he had ever been involved in any difficulty with his crews.

As above indicated, plaintiff produced no other fact witnesses. He admitted his companions were seamen like himself and could be located through the public records, and furthermore conceded that he had made no attempt to contact them as witnesses.

The question of liability in the case turned on the credibility of the plaintiff as against the sworn testimony of Higginbotham, Curtis, Miss Coria, and the taxi drivers Garcia and Hippolito. The jury believed the defense witnesses and disbelieved the plaintiff.

Plaintiff objected strenuously to the admission in evidence of the depositions of Miss Coria, Hippolito and Garcia on the theory that the only identity by these witnesses of plaintiff and his associates was by name and that there were no confirmatory facts or circumstances. Plaintiff furthermore objected to the Court's affirmance of defendant's point for charge No. 6 as follows:

"If you believe the testimony of the two taxicab drivers and Miss Coria that Mr. Campbell and other seamen attacked Mr. Higginbotham earlier that night, you are justified in concluding that Mr. Higginbotham was in fear of further attack by these men when they met on the dock, and in that event he was entitled to take reasonable means for his own protection. In such case, the shipowner would not be liable for injuries sustained by Mr. Campbell if he fell over some object on the dock while running away from the Chief Mate after the men had resumed the fight."

stating,

"It is thus clear that the basis of defendant's point for charge no. 6 was the testimony of Hipolito, (sic) Garcia and Miss Coria, and that the basis of their testimony was their identification by name of plaintiff and his shipmates."

In this connection it is interesting to note that while plaintiff did file cross-interrogatories he did not cross-examine the witnesses on the matter of identification. He now seeks to impugn the identification because each witness did not specify the basis for naming Campbell, Johns and Houghton.

The witnesses testified freely at the police investigation which was held shortly after the incident and also gave statements to the investigator for the defendant. Hippolito's identification is confirmed by the fact that he found Campbell's seamen's papers in his cab after they left. This is mentioned in the statement which Hippolito gave the police the day after the incident and which is annexed to the answers to the interrogatories. Campbell admitted that he was in a taxicab that night and that he had lost his papers somewhere that day. He further admitted having been visiting around drinking places with Johns and Houghton, and having seen Higginbotham.

■ The testimony of all of the defense witnesses was clear, consistent, each with the other, and convincing. The close sequence of events, the taxi trips, the stop and the assault at the Coria home, the finding of the seaman's papers, the testimony at the police investigation and the statements to the defendant's investigator, all occurring in a very short time and doubtless in the presence of Campbell and his associates at the police hearing, clearly establish the identity on a much broader base than that by name only.

■ The jury was fully and, I am satisfied, adequately instructed on the matter of credibility and they did not believe the plaintiff's story. I feel that their conclusion was amply supported by the evidence.

Plaintiff's motion for new trial is denied.